Case No. 24-12563

---

In the United States Court of Appeals
Eleventh Circuit

---

**Aloysha Tunkle**
*Plaintiff-Appellant*

v.

**Reliastar Life Insurance Company**
*Defendant-Appellee*

---

Appeal from the United States District Court,
Middle District of Florida, Fort Myers Division
Hon. Sheri Polster Chappell, Presiding
Civil Action No. 2:23-cv-00010

---

**Appellant's Brief**

---

Matthew J. Kita
Texas Bar No. 24050883
3110 Webb Avenue, Suite 150
Dallas, Texas 75205
(214) 699-1863
matt@mattkita.com

Counsel for Appellant

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

Aloysha Tunkle _____ *vs.* Reliastar Life Insurance Co. _____ Appeal No. 24-12563 _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

21st Century Oncology

Matthew Bourhis

Bourhis Law Group, PC

Hon. Sheri Polster Chappell

Genesiscare

Wendy L. Furman

McDowell Hetherington LLP

Matthew J. Kita

Reliastar Life Insurance Company

John V. Tucker

Tucker Disability Law, PA

Submitted by:
Signature: _____
Name: Matthew J. Kita      Prisoner # (if applicable): _____
Address: 3110 Webb Avenue, Suite 150; Dallas, Texas 75205
Telephone #: (214) 699-1963

Rev.: 2/23

## Statement Regarding Oral Argument

Appellant respectfully submits that the legal issues presented in this appeal are clear and uncomplicated and that this Court can consider the matter without oral argument. Should this Court determine that oral argument would assist its deliberations, Appellant respectfully requests an opportunity to participate.

# Table of Contents

Certificate of Interested Persons ....................................................... 2

Statement Regarding Oral Argument ............................................... 3

Table of Authorities ...................................................................... 5

Statement of Jurisdiction ............................................................. 6

Issue Presented ............................................................................ 7

Statement of the Case .................................................................. 8

Summary of the Argument ........................................................... 15

Argument ..................................................................................... 16

I.    The district court's analysis ignored the standard of review and
reached an unreasonable result. ......................................... 16

    A.    ERISA's "arbitrary-and-capricious" standard is akin to review
for "reasonableness" under an "abuse-of-discretion"
standard. .................................................................. 16

    B.    The district court committed reversible error when disregarding
a claimant's explanation for the *lack* of evidence that was
*supported* by the administrative record. .................................... 18

Conclusion ................................................................................... 23

Certificate of Service .................................................................... 24

Certificate of Compliance ............................................................ 24

# Table of Authorities

## Cases

*Blankenship v. Metro. Life Ins. Co.*,
    644 F.3d 1350 (11th Cir. 2011)..................................................17, 18, 20, 22

*Hill v. Employee Benefits Admin. Comm. of Mueller Group LLC*,
    971 F.3d 1321 (11th Cir. 2020)..................................................................18

*Lee v. Equity Properties Asset Mgmt., Inc.*,
    No. 8:13-CV-2239, 2015 WL 6956556 (M.D. Fla. Nov. 10, 2015).....18, 20

*Lipsey v. Union Underwear Pension Plan*,
    146 F. App'x 326, 330 (11th Cir. 2005) ...................................................18

*Schwartz v. Sprint Corp.*,
    No. 5:05-CV-420, 2006 WL 3422417 (M.D. Fla. Nov. 28, 2006)...........18

## Statutes

28 U.S.C. § 1291 ............................................................................................6

## Rules

Fed. R. App. P. 4 ............................................................................................6

# STATEMENT OF JURISDICTION

The district court signed an order granting a final summary judgment in favor of Defendant-Appellee on August 2, 2024.[1] Section 1291 of the Judiciary and Judicial Procedure Code provides this Court with jurisdiction to review a district court's final judgment.[2] Plaintiff-Appellant filed his notice of appeal on August 6, 2024,[3] which is within the 30-day time permitted by Federal Rules of Appellate Procedure.[4]

---

[1] ECF 74, p. 20.

[2] 28 U.S.C. § 1291.

[3] ECF 77, p. 1.

[4] Fed. R. App. P. 4(a)(1)(A).

# Issue Presented

In this ERISA dispute, Appellant seeks review of Appellee's denial of his claim for long-term disability benefits, which accrued during the opening months of the COVID-19 pandemic. Appellee concluded that the Appellant's employer's records during that time were insufficient to demonstrating that Appellant was working the requisite number of hours to demonstrate his entitlement to these benefits. If Appellant's explanation about the lack of records *can* be supported by the evidence in the administrative record that *does* exist, can a district court affirm a denial of those benefits via summary judgment without abusing its discretion?

## Statement of the Case

Dr. Aloysha Tunkle began working for 21st Century Oncology as a general surgeon in 2010.[5] On January 1, 2020, Reliastar administrated a group insurance policy to 21st Century that provided— among other things—long-term disability benefits to its employees.[6] In this appeal, this Court is asked to determine whether Dr. Tunkle is entitled to receive those benefits.

Because this case is governed by ERISA, the answer to this question ultimately turns on this Court's application of the facts in the administrative record to the relevant provisions in the Policy.[7] And here, there is no dispute that:

— To qualify for coverage under the Policy, the insured employee must be in "active employment," meaning the insured *works* at least 30 hours per week;[8]

— Coverage under the Policy ends on the last day the insured is in "active employment;"[9] and

— The Policy excludes coverage for preexisting conditions, which is defined as "any condition for which you have received medical treatment or consultation, taken or were prescribed

---

[5] ECF 74 at 1 (citing Doc. 56-1 at 481).

[6] ECF 74 at 2 (citing ECF 56-1 at 741); *see also* ECF 33 (stipulation regarding Reliastar).

[7] ECF 74 at 2–3.

[8] ECF 74 at 2 (citing ECF 57-1 at 1, 4) (emphasis added).

[9] ECF 74 at 2 (citing ECF 57-1 at 9).

drugs or medicine, or received care or services, including diagnostic measures" within three months before coverage began.[10]

At the beginning of 2020, Dr. Tunkle was enrolled for long-term disability benefits under the Policy and met Reliastar's definition of "active employment" through March 14.[11] But as this Court is well-aware, on March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.[12] Between March 14 and May 23, 2020, 21st Century's records reflect that Dr. Tunkle was paid for only 4.75 hours per week.[13] Notwithstanding these records, however, Dr. Tunkle represented to Reliastar throughout this dispute that—even during the first two months of the pandemic—he (a) continued to perform surgeries, evaluate patients, and engage in the administrative duties related to his profession for 35-40 hours per week for 21st Century; and (b) served as an "essential worker" who was "on call" seven days per week, 24 hours per day, to perform emergency

---

[10] ECF 74 at 5 (citing ECF 57-1 at 6).

[11] ECF 74 at 2–3 (citing ECF 56-1 at 551–59).

[12] *See* CDC Museum Timeline, *available at* https://tinyurl.com/Covid19TimelineCDC (last visited Dec. 5, 2023). Dr. Tunkle asked the district court to take judicial notice of this fact. (citing ECF 67 at 9 (citing Fed. R. Evid. 201(b)(1), (c)). The district court's opinion did not address this request.

[13] ECF 74 at 3 (citing ECF 56-1 at 554–50).

surgical procedures.[14] Moreover, Dr. Tunkle also explained that he voluntarily cut his salary during this time so that 21st Century could continue to pay its employees.[15]

After May 24, 2020, 21st Century's payroll records reflected that Dr. Tunkle logged 72 or 80 per two-week pay period.[16] Ten days earlier, however, Dr. Tunkle began to experience a tremor in his left arm, which made performing surgery difficult.[17] As the symptoms worsened, he began treatment with a neurologist in June 2020, while continuing to work full-time.[18] But on July 30, 2020, Dr. Tunkle's neurologist concluded that Dr. Tunkle could no longer perform surgeries.[19] Accordingly, Dr. Tunkle submitted a claim for long-term disability benefits under the Policy.[20]

There is no dispute that 21st Century's payroll records reflect that Dr. Tunkle was *paid* for fewer than 30 hours of work per week between March 14

---

[14] ECF 56-1 at 96–97.

[15] ECF 56-1 at 152.

[16] ECF 74 at 3 (citing ECF 56-1 at 535-43).

[17] ECF 74 at 3 (citing ECF 56-1 at 430).

[18] ECF 74 at 3 (citing ECF 56-1 at 535-43).

[19] ECF 74 at 3 (citing ECF 56-1 at 167).

[20] ECF 74 at 3 (citing ECF 56-1 at 1, 703).

and May 23.[21] But the "Appointment Productivity Reports" that Dr. Tunkle provided to Reliastar reflect that he continued to see patients during this time period, and that he spent more hours treating patients than the number of hours for which 21st Century paid him.[22] Moreover, it is also undisputed that Dr. Tunkle provided Reliastar with (a) his own detailed explanation of the work he was performing for 21st Century during that time (discussed above) as well as an detailed explanation why this work was not documented in the reports that 21st Century provided to Reliastar;[23] and (b) a letter from his former business partner, Dr. Justin Warner, who confirmed Dr. Tunkle's account.[24] Finally, 21st Century also provided Reliastar with documentation to support Dr. Tunkle's assertions that he took a reduced salary and profit share to cover 21st Century's overhead and employee benefits during this time.[25]

Reliastar provided the information it received from 21st Century to its CPA and requested a recommendation for its claim decision.[26] After

---

[21] ECF 56-1 at 554–50.

[22] ECF 56-1 at 370–82; 554–50.

[23] ECF 56-1 at 96–97, 152.

[24] ECF 56-1 at 95.

[25] ECF 56-1 at 60, 65–66, 73, 84–86.

[26] ECF 56-1 at 53.

reviewing the above-referenced documents, Reliastar's CPA concluded that "it cannot be determined if Dr. Tunkle's hours reported 3/15/2020–5/23/2020 in the report are less than normal."[27] Notwithstanding this inconclusive finding, however, Reliastar decided that *all* of Dr. Tunkle's work hours between March 15, 2020, and May 23, 2020 *must* be documented in payroll or productivity records for him to be eligible to receive benefits.[28] As it noted in a letter to Dr. Tunkle's counsel:

> While we appreciate the declarations provided by your client and his former partner, given the conflicting information provided by your client's employer, we do not have sufficient proof to establish that he continued to work the minimum hours required under the policy during that time period.[29]

Accordingly, Reliastar concluded that:

— Dr. Tunkle's coverage ended on March 15, 2020 because he was not "actively employed" between that day and May *24*, 2020;

— Dr. Tunkle's hand tremors were first diagnosed on May *14*, 2020;

— Dr. Tunkle's coverage resumed on May *25*, 2020; and

— Dr. Tunkle's claim for long-term disability benefits arose from a "pre-existing condition" that is excluded from coverage

---

[27] ECF 56-1 at 54–57.

[28] ECF 56-1 at 29.

[29] ECF 56-1 at 29.

because his diagnosis occurred within three months of the date on which his coverage resumed.[30]

Accordingly, Reliastar denied Dr. Tunkle's claim.[31]

Dr. Tunkle initiated this proceeding and asked the district court to (a) declare that Reliastar violated the terms of the Policy by denying his claim; and (b) order Reliastar to pay his benefits, court costs, pre-judgment interest, and attorneys' fees.[32] Reliastar filed a motion for summary judgment[33] in which it argued that Dr. Tunkle was not entitled to this relief because its benefits-denial decision was not "arbitrary and capricious."[34] In his opposition to Reliastar's motion, Dr. Tunkle argued that evidence in the administrative record presented a genuine factual dispute as to whether he was "actively employed" between March 15 and May 24, 2020.[35]

The district court agreed with Reliastar and granted a final summary judgment in its favor.[36] According to the district court, the COVID-19

---

[30] ECF 56-1, p. 18–22; 74 at 18–19.

[31] ECF 56-1, p. 18–22.

[32] ECF 1.

[33] Dr. Tunkle also filed a motion for partial summary judgment, ECF 64, which the district court denied, ECF 74 at 20.  Dr. Tunkle is *not* seeking review of the district court's ruling on *his* motion.

[34] ECF 63 at 16–17.

[35] ECF 68 at 17–21.

[36] ECF 74 at 20.

pandemic "was irrelevant to the number of hours that Dr. Tunkle may or may not have worked."[37] The district court further noted that it "failed to see the relevance" of Dr. Tunkle's assertion that he also worked for 21st Century as a COVID "first responder" during the opening months of the pandemic.[38] Instead, the district court concluded that 21st Century's pay summaries were "most compelling" to its analysis.[39] And although the district court acknowledged that Dr. Tunkle provided Reliastar with an explanation of his "job duties that were not reflected in the productivity reports," it concluded that such explanations "will not suffice."[40]

In sum, the district court concluded that "Reliastar's reliance on documents was reasonable, especially given the absence of any contrary evidence," "agreed with Reliastar's determination that Dr. Tunkle was not 'actively employed' between March 25 to May 23, 2020,"[41] and concluded that Reliastar properly denied Dr. Tunkle's claim as a "pre-existing condition."[42]

---

[37] ECF 74 at 15.

[38] ECF 74 at 15.

[39] ECF 74 at 13 (emphasis added).

[40] ECF 74 at 14, 18.

[41] ECF 75 at 18.

[42] ECF 75 at 19.

## Summary of the Argument

This Court should hold that the district court erred when affirming Reliastar's decision to deny Dr. Tunkle's claim for long-term disability benefits. Although the standard of review required the district court to review the administrative record in the aggregate and in a light most favorable to Dr. Tunkle, the district court did the opposite: It disregarded written statements from Dr. Tunkle and his colleagues that were supported by the *collective* evidence and instead gave credence to selected portions of the record that were internally inconsistent and contrary to common sense. The district court's opinion also erroneously concluded that *Dr. Tunkle* had an affirmative obligation to keep or create records that supported his claim for benefits, despite the absence of any contractual or controlling authority requiring him to do so. Because genuine issues of material fact remain in dispute as to the reasonableness of Reliastar's conduct under the circumstances—which must necessarily consider the fact that this claim arose during the initial months of the COVID-19 pandemic—this Court should reverse the district court's summary judgment, remand this case to the district court for further proceedings, and grant Dr. Tunkle all other relief to which he is entitled.

**I.    The district court's analysis ignored the standard of review and reached an unreasonable result.**

**A.    ERISA's "arbitrary-and-capricious" standard is akin to review for "reasonableness" under an "abuse-of-discretion" standard.**

There is no dispute that this Court uses a six-step analysis (often referenced as the *Blankenship* test) when considering appeals of benefits-denial claims under ERISA:

1.    Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the Court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2.    If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

3.    If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4.    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

5.    If there is no conflict, then end the inquiry and affirm the decision.

6.      If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.[43]

Reliastar's motion for summary judgment only addressed the third factor and focused its argument on whether its decision to deny Dr. Tunkle's benefits was "arbitrary and capricious."[44] The district court's opinion, however, did not reach this issue.[45] Instead, it concluded that Reliastar's decision was "proper" and, therefore, was not "de novo wrong" under the first *Blankenship* factor.[46]

For purposes of this appeal, Dr. Tunkle does not dispute that Reliastar (a) was vested with the discretion to review his claim; and (b) was not operating under a conflict of interest and, therefore, the second, fifth, and sixth prongs of *Blankenship* are not at issue here. And because a decision that is "arbitrary and capricious" under the third step necessarily satisfies the "de novo wrong" requirement of the first step, this Court must reverse the district court's judgment if it concludes that Reliastar's decision was

---

[43] ECF 74 at 11–12 (citing *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011)).

[44] ECF 63 at 16–17.

[45] ECF 74 at 13 n.6.

[46] ECF 74 at 13, 19.

"unreasonable."[47] To that end, this Court has held that *Blankenship's* "arbitrary-and-capricious" standard of review of a benefits administrator's decision is substantively identical to the "abuse of discretion" standard that it uses when considering (for example) a district court's evidentiary rulings.[48] Accordingly, reversal is required if "no reasonable jurist" could have arrived at the same conclusion.[49] And when making this determination, this Court must view "the aggregate evidence in the light most favorable to the non-moving party."[50]

**B. The district court committed reversible error when disregarding a claimant's explanation for the *lack* of evidence that was *supported* by the administrative record.**

This Court should reverse because the district court's conclusion is unreasonable and was based on a misapplication of the requisite standard of review. According to the district court, Dr. Tunkle's "hourly logs" provided the "most compelling" evidence of the amount of time he worked for 21st

---

[47] *Blankenship*, 644 F.3d at 1354; *Hill v. Employee Benefits Admin. Comm. of Mueller Group LLC*, 971 F.3d 1321, 1326 (11th Cir. 2020).

[48] *See, e.g.*, *Lipsey v. Union Underwear Pension Plan*, 146 F. App'x 326, 330 (11th Cir. 2005)

[49] *Schwartz v. Sprint Corp.*, No. 5:05-CV-420, 2006 WL 3422417, at *10 (M.D. Fla. Nov. 28, 2006).

[50] *Lee v. Equity Properties Asset Mgmt., Inc.*, No. 8:13-CV-2239, 2015 WL 6956556, at *10 (M.D. Fla. Nov. 10, 2015) (citing *Blankenship*, 644 F.3d at 1354 n.4).

Century for any given pay period.[51] But if these "hourly logs"(which are actually titled "pay summaries") and all of the other evidence in the administrative record were viewed together in a light most favorable to Dr. Tunkle, the district court should have reached the opposite result.

At the outset of this discussion, it is important to note that the district court tacitly agreed with Dr. Tunkle when it acknowledged that it is "common sense" that a surgeon's job involves more than appointments with patients.[52] Yet notwithstanding this entirely reasonable (and undisputed) observation, it did not factor into the district court's analysis of the amount of time Dr. Tunkle actually worked between March 15 and May 23, 2020 from the evidence in the administrative record, which revealed:

|  | Appointment Reports[53] | Pay Summaries[54] |
|---|---|---|
| Mar 15–21 | 10.75 hours | 9.5 hours for both weeks |
| Mar 21–28 | 4 hours | |
| Mar 29–April 4 | 5.25 hours | 9.5 hours for both weeks |
| April 5–11 | 4.5 hours | |
| April 12–18 | 3 hours | 9.5 hours for both weeks |
| April 19–25 | 2.25 hours | |
| April 26–May 2 | 4.5 hours | 9.5 hours for both weeks |
| May 3–9 | 5.5 hours | |

[51] ECF 74 at 13.

[52] ECF 74 at 13, 16.

[53] ECF 56-1 at 370–82.

[54] ECF 56-1 at 527–60.

| | Appointment Reports | Pay Summaries |
|---|---|---|
| May 10–16 | 14.75 hours | 9.5 hours for both weeks |
| May 17–23 | 9.5 hours | |
| May 24–30 | 8 hours | 72 hours for both weeks (plus 8 hrs holiday pay) |
| May 31–June 6 | 10 hours | |
| June 7–13 | 7.5 hours | 80 hours for both weeks |
| June 14–20 | 10 hours | |
| June 21–27 | 6.25 hours | 80 hours for both weeks |
| June 28–July 3 | 15.25 hours | |

Indeed, on all but one of the pay periods in question, 21st Century's records reflect that Dr. Tunkle spent *more* time meeting with patients than the number of hours that 21st Century paid him to work.[55] Such a result is consistent with Dr. Tunkle and Dr. Warner's representations to Reliastar that Dr. Tunkle "voluntarily cut his own salary" between March and May 2020.[56] Yet the district court concluded that Dr. Tunkle and Dr. Warner's accounts were "unsupported by any evidence" and "uncorroborated."[57] Because the district court could not have reached this conclusion while viewing "the aggregate evidence in the light most favorable to the non-moving party,"[58] it erred in its application of the standard of review.

---

[55] *Compare* ECF 56-1 at 370–82 *with* ECF 56-1 at 527–60.

[56] ECF 56-1 at 95, 152.

[57] ECF 74 at 13, 14.

[58] *Lee*, 2015 WL 6956556, at *10; *Blankenship*, 644 F.3d at 1354 n.4).

Along this same line, the district court also erred when it concluded that the COVID-19 pandemic "was irrelevant to the number of hours that Dr. Tunkle may or may not have worked" because "his recorded hours shot back up after May 23, 2024.[59] As the chart above reflects, the number of hours Dr. Tunkle spent meeting with patients between March and July 2020 was generally consistent—regardless of the amount he was being paid.

The district court's tacit conclusion that Dr. Tunkle had an obligation to support his version of events with documentary evidence is also divorced from the administrative record. According to the district court:

> If [Dr. Tunkle's representations are] true, surely there would be *something* he could offer in support: call logs, redacted medical records, invoices, mileage receipts, calendar appointment entries, or hospital records (to name a few).[60]

But Reliastar's motion for summary judgment only argued that "the policyholder" (i.e. 21st Century) was contractually obligated to provide it with "information that bears on employees' eligibility for coverage, including occupational and salary information;"[61] it never suggested that *Dr. Tunkle* had an obligation to keep or create such records in order to prove his

---

[59] ECF 74 at 15.

[60] ECF 74 at 14.

[61] ECF 63 at 4 (citing ECF 62-1 at 105); *see also* ECF 62-1 at 102 (identifying 21st Century as the "policyholder").

claim. Nor could it.[62] And because the district court does not cite any authority in its opinion to support a denial on this basis, this Court should conclude that it abused its discretion for this reason as well.

Finally, even assuming—without conceding—that the absence of such supporting documentation *could* be the proper basis for denying coverage, it cannot be disputed that none of the authorities on which Reliastar or the district court relied involved the absence of supporting documentation during a global pandemic. Indeed, all of its cited cases predate 2020. In the absence of any controlling authorities addressing the consequences of 21st Century or Dr. Tunkle's failure to keep or create records under these obviously rare and extenuating circumstances for purposes of evaluating an ERISA claim, this Court should conclude that genuine issues of material fact remain in dispute as to whether Reliastar's decision to denial of coverage was "unreasonable"[63] and, accordingly, reverse the district court's summary judgment.

---

[62] ECF 62-1 at 143 (identifying Dr. Tunkle's requirements for proof of his claim)

[63] *Blankenship*, 644 F.3d at 1354.

## Conclusion

This Court should hold that the district court erred when affirming Reliastar's decision, reverse the district court's summary judgment, remand this case to the district court for further proceedings, and grant Dr. Tunkle all other relief to which he is entitled.

Respectfully submitted,

s/ Matthew J. Kita
Matthew J. Kita
Texas Bar No. 24050883
3110 Webb Avenue, Suite 150
Dallas, Texas 75205
(214) 699-1863
matt@mattkita.com

Counsel for Appellant

## CERTIFICATE OF SERVICE

I served a copy of Appellant's Brief on the following counsel of record via CM/ECF on December 6, 2024.

s/Matthew J. Kita
MATTHEW J. KITA

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,243 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Equity Text B typeface.

Signed this 6th day of December, 2024.

s/Matthew J. Kita
MATTHEW J. KITA
COUNSEL FOR APPELLANT